____ FILED ____ ENTERED
____ LOGGED ____ RECEIVED

JAN 24 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY ____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRUCE KEVIN LEWIS, | * | |
| Petitioner, | * | |
| v. | * | Civ. Action No. RDB-18-1683<br>Crim. Action No. RDB-15-0288 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

On June 26, 2017, Petitioner Bruce Kevin Lewis ("Petitioner" or "Lewis") pled guilty to one count of conspiracy to distribute and possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 846. (ECF No. 466; ECF No. 1, at 6.) On October 3, 2017, this Court[1] sentenced Fleming to 60 months of imprisonment. (ECF No. 494.) Currently pending before this Court is Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (ECF No. 553.) For the following reasons, Petitioner's Motion (ECF No. 553) is DENIED.

## **BACKGROUND**

According to the facts to which the parties stipulated in the Plea Agreement, Lewis and his co-conspirator, Donald Russell, illegally possessed and distributed oxycodone through two wellness clinics, which they owned and operated: PG Wellness Center, LLC

---

[1] On July 12, 2018 this case was reassigned to the undersigned Judge Richard D. Bennett.

1

located in Prince George's County, Maryland; and A Plus Pain Clinic, LLC, located in the District of Columbia. (Plea Agreement 4, ECF No. 468.) Russell oversaw the business activities of A Plus Pain and Lewis ran the day-to-day operations at PG Wellness. (*Id.*) Lewis and Russell operated these clinics as "pill mills," that is, they used the clinics to prescribe oxycodone to patients who had no legitimate medical need for the substance. (*Id.*) They hired and supervised employees, approved financial transactions on behalf of the companies, and they split their profits evenly among themselves. (*Id.*) Together, they coordinated visits by "runners," individuals who did not have a medical need for oxycodone, to visit both clinics and fill oxycodone prescriptions at pharmacies. (*Id.*) To facilitate their unlawful activities, Lewis illegally bought and sold oxycodone pills, sometimes in bulk. (*Id.*)

On May 2, 2015 the Grand Jury for the District of Maryland issued an indictment against Lewis and others charging them with conspiracy to distribute and possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 846. (ECF No. 1, at 6.) On June 26, 2017, Lewis pled guilty to the offense after entering into a plea agreement. (ECF No. 468). Before his sentencing, the Probation Office submitted a Presentence Investigation Report recommending that Petitioner's Sentencing Guideline Range should be 135 to 168 months, based on an offense level of 31 and a criminal history of III. (ECF No. 485, at 13.)

On October 3, 2017 this Court held a sentencing hearing. (ECF No. 491.) At the hearing, and over the Government's objections, defense counsel argued that a criminal history of III over-represented Petitioner's history. (Sentencing Tr. 2:11-14, ECF No. 545.) This argument was successful, as this Court noted it would depart from a criminal history of

2

III and apply a criminal history of I instead. (*Id.* at 2:18-3:5; 17:19-22.) This Court also determined that Petitioner's offense level should be adjusted to 27. (*Id.* at 3:2-5.) Based on an adjusted offense level of 27 and a criminal history category of I, this Court calculated that Petitioner's Sentencing Guidelines range fell between 70 and 87 months—nearly half of the range recommended by the Presentence Investigation Report. (*Id.*)

In light of these calculations, the Government requested a sentence of 70 months, at the low end of the adjusted guideline range. (*Id.* at 11:1-3.) In response, this Court noted that Alex Mori, a defendant in a related "pill mill" case, had recently been sentenced to only 48 months of incarceration. (*Id.* at 4:1-2; 14:3-11.) The Government replied that Lewis deserved a harsher sentence than Mori because Lewis and Russell had operated two pill mill clinics whereas Mori and his partner had only operated one. (*Id.* at 4:11-19; 11:21-25.) Counsel for Defendant argued that Lewis was substantially less culpable than his co-defendant, and, accordingly, deserved a sentence "at or below the sentence that was given to Mr. Mori in this case." (*Id.* at 8:8-13.) Having entertained these arguments, the Court imposed a 60-month prison sentence—a full 10 months below the adjusted Guidelines range and greatly below the range recommended by the Presentence Investigation Report. (*Id.* at 14:12-19; ECF No. 494, at 2.)

On June 8, 2018 Petitioner filed the pending Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 553.) In his Motion, Petitioner contends that his counsel was constitutionally ineffective at sentencing, despite securing a sentence

3

about half as long as the sentence that the Probation office recommended and fell 10 months below the adjusted Guidelines range.

## STANDARD OF REVIEW

This Court recognizes that Petitioner is *pro se* and has accorded his pleadings liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Alley v. Yadkin County Sheriff Dept.*, No. 17-1249, 698 F. App'x 141, 142 (4th Cir. Oct. 5, 2017) (citing *Erickson* for the proposition that "[p]ro se complaints and pleadings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers"). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to a collateral attack. *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of a § 2255 collateral attack is far narrower than an appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, __ U.S. __, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, procedural default will bar consideration under § 2255 of any matters that "could have been but were not pursued on direct appeal, [unless] the movant show cause and actual prejudice resulting from the errors of which he complains." *United States v. Pettiford*, 612 F. 3d 270, 280 (4th Cir. 2010) (citing

4

*United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)).

## **ANALYSIS**

Petitioner argues that his counsel was ineffective at sentencing because he failed to present national sentencing statistics for this Court's consideration and did not argue for a substantially lesser sentence than the one imposed upon Mori, a defendant in a similar "pill mill" case. A freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). To state a claim for relief based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Id.* at 688. In making this determination, courts apply a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688–89. The second, or "prejudice" prong, requires that a petitioner demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687.

In applying the *Strickland* test, the United States Court of Appeals for the Fourth Circuit has noted that there is no reason to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee*, 723 F. 3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based solely on a deficiency in satisfying either the "performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697. The Fourth Circuit has noted further that the mere possibility of a different trial result does not satisfy the burden of proving prejudice. *Hoots v.*

*Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986).

I. **Counsel's Decision not to Highlight National Sentencing Statistics**

Petitioner first contends that he was provided ineffective assistance of counsel because his lawyer did not argue that his sentence was excessive in light of national sentencing statistics published by the United States Sentencing Commission. (ECF No. 553-1, at 11.) Petitioner contends that these statistics "would have certainly demonstrated that there is a reasonable probability that his 60-month sentence was extremely excessive." (*Id.* at 10.) Counsel's decision not to present these statistics does not amount to deficient performance nor has Petitioner met his burden to show that counsel's performance prejudiced him on this basis. The 2017 United States Sentencing Commission Statistical Information Packet shows that the nationwide median sentence for an offense of drug trafficking was 60 months, the exact same sentence imposed upon Defendant. U.S.S.C. Statistical Information Packet, Fiscal Year 2017, Fourth Circuit, Table 7 (2017). The mean sentence imposed was significantly higher—76 months in Maryland and 75 months nationwide. *Id.* At best, these statistics supported the imposition of at least a 60-month sentence—the same sentence he received. Had counsel presented this information, it would have seriously undercut his argument that Petitioner deserved at most a 48-month sentence.

II. **Counsel's Arguments Concerning the Sentence Imposed in *United States v. Mori***

Petitioner additionally argues that his counsel was ineffective because he failed to argue that his criminal history was "significantly milder" than the criminal history of the Defendant in *United States v. Mori*, who was sentenced to 48-months imprisonment. (ECF No. 553-1, at 13.) Counsel's decision not to use precedent in the precise manner Petitioner contemplates

does not amount to constitutionally defective performance. Rather, the record reflects that counsel was familiar with the *Mori* case and effectively used this precedent to support an argument that Petitioner's sentence should fall dramatically below an adjusted Guidelines range. This type of argument, reflecting knowledge of relevant precedent and its applicability to the facts at hand, amounts to a "strategic choice" by Petitioner's counsel which is "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Accordingly, Petitioner's ineffective assistance of council claim is without merit.

### III. Petitioner's Reply (ECF No. 570)

In his Reply, Petitioner presses three additional points to support his claim that his representation was constitutionally inadequate. First, he argues that counsel should have requested a postponement based on the Government's correspondence concerning the *Mori* case. (ECF No. 570, at 1.) Next, he mentions that his co-defendant, Russell, received a 60-month sentence even though this Court had stated, during his sentencing, that Russell was more culpable than Lewis. (*Id.* at 1-2.) Finally, Lewis faults his counsel for failing to submit for evidence notes taken by the Government during proffer meetings. (*Id.* at 2.)

To the extent that these arguments were raised for the first time in Petitioner's Reply, this Court need not consider them. *See, e.g., United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (declining to consider an argument first raised in a reply brief). Nevertheless, all of these arguments are meritless. Counsel's decision not to seek a postponement based on the Government's correspondence about the *Mori* case does not amount to deficient performance, because, as previously discussed, Counsel made arguments concerning the *Mori* case which

demonstrated sufficient familiarity with this precedent and ultimately resulted in a favorable sentence.

Additionally, the sentence imposed upon Russell in no way implicates his counsel's performance at his sentencing hearing. At the time of sentencing, Petitioner's co-defendant had not yet been sentenced. (ECF No. 545, at 4:25-5:1-2.) Petitioner's counsel cannot be deemed inadequate for failing to make arguments based on a sentence which had not yet been imposed. Moreover, to the extent that counsel referenced Russell's potential sentence, he argued that Lewis deserved a lighter sentence than Russell. (*Id.* at 5:19-23.)

Finally, Petitioner's argument that his counsel was ineffective because he failed to introduce Government counsel's notes into evidence has no merit. Petitioner argues that the notes contained information about other criminal defendants who received shorter sentences. These notes are not admissible evidence and would not be helpful at a sentencing hearing. Even if these documents were admissible, Petitioner has not demonstrated that the Government's notes would have any relevance to Petitioner's sentencing.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 553) IS DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: January 23, 2019

_____

Richard D. Bennett
United States District Judge